The Legislature, at its session of 1850, passed an act entitled "An Act to authorize the sale of refused lands owned by the State, in the Counties of Macon and Cherokee." The purpose of this act was, among other things, to secure preemption rights to first settlers, and to those who had made valuable improvements upon lands occupied by them. By this act the Governor of the State was authorized (458) to appoint, and did appoint, three commissioners, whose duty and office it was, amongst other things, to hear and determine preemption claims, and to award certificates to such as might be entitled to such rights. The board of commissioners thus authorized and appointed, shortly afterwards held their session at the town of Murphy, in the County of Cherokee.
The plaintiff, in his bill, alleges, that among other claims, that of the defendant Amos Carden, for the land which is now in controversy, *Page 378 
was submitted to the board; that he claimed as the assignee of his brother, the defendant Alfred Carden, who, it was alleged, had made valuable improvements; that he pretended that, when he went off, he left property in the house to enable him to keep the possession, and that he intended to return; that Alfred was a resident of Tennessee, and he professed to have sold to his brother Amos; that these allegations are wholly untrue; that the defendant Alfred had made no such improvement; that all he did towards improvement was to go into an old Indian hut for about two months, put up a few old rails, and plant a small patch of corn on land that had been cleared by the Indians; that he did not go off with the purpose of returning, nor did he leave any article of personal property in the hut to signify such intention, and that there was no evidence as to these allegations except the oath of Alfred Carden, who, in swearing in their support, committed gross perjury; that both the Cardens are now, and have been, generally, citizens of the State of Tennessee; that the board of commissioners were mistaken in their views of the law, and as to the nature of their duties, and were imposed on, and mistaken as to the facts; that the defendant Amos, not having the possession, nor the right of possession, was not entitled to have the certificate issued to him; that the first substantial improvement made on the land in question, was by one Reuben Breeden, who settled on the same, and made permanent and valuable improvements thereon; that, when he went off, his possession was transferred to one Singleton Rhea, to whom he assigned his interest (459) by a written instrument; that S. Rhea assigned in writing to P. M. Rhea; he to Richard Roberts; and he to plaintiff; that these transfers were for valuable considerations, and bona fide; and that possession has been continued from Bredeen [Breeden] down to plaintiff; a period, amounting in all, to about thirteen years; that the plaintiff was unable to show the commissioners how the facts were, his witnesses being partly out of the State, and there was no mode of enforcing their attendance, or of procuring their testimony; that the board of commissioners being thus imposed upon by fraud and perjury, and being thus mistaken in the nature of their duties, under the Act of Assembly, wrongfully and unjustly awarded the certificate to the said Amos Carden, who shortly thereafter sold and assigned the same to the defendant G. W. Lovengood, who assigned the same to the other defendant, his son, Drury Lovengood, to whom a grant for the land has issued; that both these last named defendants had notice of the equity of the plaintiff when they took such assignments. The bill further charges that the grantee, Drury Lovengood, has obtained a verdict and judgment in the Superior Court of Cherokee, and threatens to turn plaintiff out of possession. *Page 379 
The prayer is for an injunction, and for a conveyance; also for general relief.
The answer of the defendants denies the several allegations contained in the plaintiff's bill, and insists that the transaction was really and truly as represented to the commissioners by Alfred Carden; and that the certificate properly issued to his assignee, who sold it bona fide, and without notice of any such equity as set forth, to G. W. Lovengood, who likewise, without any such notice, sold it to the other defendant, Drury Lovengood.
An injunction had been obtained upon the plaintiff's bill, which, at Fall Term of the Court below, upon the coming in of the answer, was dissolved, and the bill continued as an original.
There were replication, commissions and proofs taken; and the cause, being set down for hearing, was sent to this Court.
In Evans v. Lovengood, 54 N.C. 298, (which is a branch of this case,) it is said "the only ground upon which the plaintiff's equity can be put, is that fraud was practiced upon the commissioners, and their certificate obtained by perjury." The case was then before us upon a motion to dissolve the injunction, and went off upon the ground that the defendant Lovengood was a purchaser for a valuable consideration without notice. Of course we were not then at liberty to decide whether the plaintiff had been successful or not, in putting his case upon the only ground which was supposed to be tenable. The case is now up for final hearing, and we are satisfied that the plaintiff has failed to establish an equity, both for the want of the averments necessary to put the case upon the ground alluded to, and for the want of the necessary proof; so, he fails both upon theallegata and probata.
The cases of Fentress v. Robbins, 4 N.C. 177, Peagram v. King, 2 Hawks. Rep. 295, Ibid. 605. Deaver v. Erwin, 42 N.C. 250, Dyche v. Patton,43 N.C. 296, recognize the general doctrine that, if a verdict be obtained in an action in a Court of common law by fraud, circumvention, or perjury, a Court of Equity may decide that the party shall consent to set aside such verdict, and have the matter tried de novo in a Court of common law; in other words, a Court of Equity may require the party to give his adversary a new trial. But it is agreed that this power should be exercised with "extreme caution," and the application of the doctrine is greatly restricted, and is confined to cases which present "peculiar circumstances," under the maxim, "there must be an end to litigation." *Page 380 
For instance, the doctrine does not apply if the Court be misled, and from ignorance, or other cause, mistake the law; for Equity (461) cannot review the judgments of Courts of Law. So, it is agreed that the doctrine only applies where there is new matter, or something discovered after the trial at law, and which could not have been made available either on the trial, or as a ground for a new trial, in that Court. So, it is agreed, that to set aside the verdict on the ground of its being obtained by perjury, there must be an allegation that the party who used the testimony knew it to be false. So, there must not only be newly discovered evidence, but such evidence must bear directly upon the merits of the case, and must be decisive of it, and not tend simply to impeach the testimony of a witness at a former trial, or to add cumulative evidence as to a matter before controverted. In this connection we will remark that Peagram v. King was decided at a time when, according to McFarlane v. Shaw, 4 N.C. 102, the dying declarations of the witness Jenks was evidence in chief, and not merely evidence to impeach.
In Terry v. Young, Pre. in Ch. 193, the Lord Keeper declared "the relief must be grounded upon new matter, and not what was tried before. When it consists in swearing only, I will never grant a new trial unless it, (that is, the falsehood,) appear by deed or writing, or that the witness, upon whose testimony the verdict was given, has been convicted of perjury."
Accordingly, in Peagram v. King, which is the only case in which our Courts have applied the general doctrine, (as it is termed,) this qualification is assumed to be correct; and the Court treat the fact of the death of the witness Jenks before a prosecution could be instituted, as bringing the case within the reason of the decision.
In our case there are no averments to meet these several qualifications and restrictions of the rule. The bill does not disclose, with any kind of distinctness, the particular falsehood upon which the commissioners were induced to award the certificate to Carden. Whether Carden had made "valuable improvements" within the meaning of the statute, involved a question of construction, as to which, it is not now insisted that the Court can review the judgment of the (462) commissioners. It is not alleged that any new matter was discovered, and the plaintiff relies upon the general allegation that the testimony upon which the certificate issued was false; but he was unable to prove it, because there was no way of getting his witnesses before the commissioners; and upon the further general allegation, that both the Cardens "were, are now, and have been, generally, citizens of the State of Tennessee." *Page 381 
It is useless to consume time by going into particulars, for the purpose of showing that such general allegations cannot make a case to which the doctrine, as to the interference of Courts of Equity with verdicts and judgments in the Courts of Law, is applicable. It is also useless to refer to the evidence, except to remark that no particular falsehood is proved, either by deed, writing, or conviction of perjury, or in any other way, except by proof of general admissions and conversations of the parties, deposed to by witnesses who, themselves, appear under very questionable circumstances.
So far, we have treated the case as if the application for a new trial was in reference to the verdict and judgment of a Court of Law; but in our case, the proceeding was before three commissioners, who were appointed under the statute, to act in the nature of arbitrators in awarding certificates, which should entitle the party to a pre-emption right. No appeal, or other mode of reviewing their decision, is provided; and the object of the Legislature seems to have been to make their action final in regard to the very many controversies and disputes which it was anticipated would grow out of the unsettled condition of things in the County of Cherokee. So that it might be a matter of grave consideration, whether the doctrine in regard to proceedings in the ordinary Courts of Law is applicable to their awards. It is very certain that the mode of relief, that is, to require the parties to set aside the judgment and verdict at law, and try the matter de novo before the same Court, is not applicable; because the commissioners are functi officio, and the matter cannot be tried over again before them. A Court of Equity could only interfere by substituting itself as the tribunal for the settlement of the question controverted by the parties; (463) which presents a very serious objection to the assumption of such a jurisdiction.
Per curiam.
Bill dismissed.
Cited: Moore v. Gulley, 144 N.C. 83; Mottu v. Davis, 153 N.C. 163;Kinsland v. Adams, 172 N.C. 766; McCoy v. Justice, 196 N.C. 555; Horne v.Edwards, 215 N.C. 626. *Page 382